## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

SOVEREIGN HEALTH OF
FLORIDA, INC., a Delaware
corporation

       Plaintiff,

v.                                                    Case No:   2:15-cv-265-FtM-29CM

CITY OF FORT MYERS,

       Defendant.

_____

## ORDER

This matter comes before the Court upon review of Plaintiff's Motion for Entry of a Confidentiality Order (Doc. 25) filed on June 7, 2016; Defendant's, City of Fort Myers', Motion (1) to Compel Plaintiff to Produce Documents, (2) to Determine the Sufficiency of Plaintiff's Responses and Objections to Request for Admissions, (3) to Compel Plaintiff to Produce Two of Their Officers, Directors and Managing Agents in Fort Myers for Depositions, and (4) for the Award of Reasonable Attorney's Fees (Doc. 26) filed on June 7, 2016; and Defendant's Unopposed Motion to Enlarge Deadlines for Disclosure of Defendant's Experts, Discovery, Mediation and Dispositive Motions and *Daubert* Motions (Doc. 29) filed on September 21, 2016.   Defendant opposes Plaintiff's motion for a confidentiality order (Doc. 25), and Plaintiff opposes Defendant's motion to compel (Doc. 26).   Doc. 25 at 8; Doc. 26 at 19.

## I.   Background

Plaintiff Sovereign Health is an affiliate of a national organization that operates multiple treatment facilities.   Doc. 1 ¶ 1.   The facilities provide rehabilitative mental health treatments in a residential setting to people who have addictions to alcohol or controlled substances.   *Id.* ¶ 3.   In April 2014, Plaintiff entered into a lease with Florentine Holding Company (the "Lease") to open a residential treatment facility on the property located at 3331 E. Riverside Drive (the "Riverside Property").   *Id.* ¶¶ 14, 17.   The property is zoned as Multifamily Residential ("RM-16"), which allows the operation of "Assisted Living Facilities"[1] and "Residential Care Facilities."[2]   Doc. 26 at 3.

Before Plaintiff entered into the Lease, Defendant City of Fort Myers (the "City") issued two zoning verifications that Plaintiff could operate an Assisted Living Facility or Residential Care Facility on the Riverside Property.   *Id.* at 3-4.   On September 14, 2014, Plaintiff obtained a license to operate a residential treatment facility from the Florida Department of Children and Families ("DCF") on the Riverside Property.   Doc. 1 ¶ 30.   On November 19, 2014, Plaintiff also obtained a

---

[1]   Assisted Living Facilities include a residential facility that "provides housing, meals, and one or more personal services, for a period exceeding 24 hours, to one or more adults who are not relatives of the owner or administrator."   Doc. 26-2 at 2.

[2]   Residential Care Facilities are "establishments primarily engaged in the provision of residential social and personal care for [] special categories of persons with some limits on ability for self-care, but *where medical care is not a major element.*"   Doc. 26-2 at 8 (emphasis added).   Residential Care Facilities may provide "supervision and care as may be necessary to meet the physical, emotional, and social needs of the residents for a period exceeding 24 hours and licensed by the department of health."   *Id.*

license to operate a residential treatment facility from the Florida Agency for Health Care Administration on the Riverside Property.   *Id.* ¶ 32.

The dispute arose between the parties when Defendant refused to process Plaintiff's application for a business tax receipt.   *Id.* ¶ 36.   Plaintiff alleges that Defendant's decision was based on complaints from Plaintiff's neighbors, who expressed "irrational" fears of Plaintiff's residents.   *Id.* ¶¶ 34-36.   Defendant, on the other hand, states that Plaintiff began operating without a business tax receipt in violation of the City's requirement to obtain a business tax receipt before beginning operations.   Doc. 26 at 4.   Defendant also learned that the DCF's license allowed Plaintiff to provide residential detoxication services and that Plaintiff advertised its detoxication services on its website.   *Id.*   Defendant claims that Plaintiff's conduct violated the City's zoning code because Plaintiff cannot provide "Social Services," defined as "[u]ses that primarily provide treatment of those with psychiatric, alcohol, or drug problems, and transient housing related to social service programs," on the Riverside Property.   *Id.*; Doc 26-1 at 9.   Therefore, in processing Plaintiff's application for a business tax receipt, Defendant requested Plaintiff to submit information regarding the nature of its business operations.   Doc. 26 at 6.   Plaintiff has not provided such information to Defendant.   *Id.*

On January 14, 2015, Defendant issued a Notice of Violation, which Plaintiff describes as a Cease and Desist Order, based on Plaintiff's operation without a business tax receipt and a certificate of use and Plaintiff's use of the Riverside Property in violation of the RM-16 zoning category.   Doc. 28 at 5; Doc. 26 at 5.   On

March 12, 2015, the City's Code Enforcement Board held a hearing and found that Plaintiff was guilty of the violations.   Doc. 26 at 5.   Plaintiff claims that the board found Plaintiff in violation of the code because of neighbors' objections.   Doc. 28 at 5. On March 13, 2015, Plaintiff met with a City official who told Plaintiff that Defendant would not issue a business tax receipt until Plaintiff forfeited its DCF license.   *Id.* at 6.   Soon after, Plaintiff filed an administrative appeal of the board's decision and a petition seeking an emergency writ of mandamus.   Doc. 26 at 5.

On April 28, 2015, Plaintiff filed a Complaint against Defendant in this Court on the grounds that Defendant has unlawfully discriminated against Plaintiff under the Fair Housing Act and Title II of the Americans with Disabilities Act.   Doc. 1 ¶ 3. Defendant defends itself on the ground that Plaintiff illegally operated a facility in violation of the City's code.   Doc. 4 at 9.

## II.   Defendant's Motion to Compel Plaintiff's Response to Defendant's First Request for Production (Doc. 26) and Plaintiff's Motion for Entry of a Confidentiality Order (Doc. 25)

On June 7, 2016, Defendant filed a motion to compel Plaintiff (1) to produce documents responsive to Defendant's First Request for Production of Documents, (2) to determine the sufficiency of Plaintiff's responses to Defendant's First Requests for Admissions, (3) to take depositions of Plaintiff's two officers in Fort Myers, and (4) to request reasonable attorney's fees.   Doc. 26.   Plaintiff simultaneously moved for a confidentiality order regarding Defendant's First Request for Production of Documents and First Set of Interrogatories.   Doc. 25.

First, Defendant seeks to compel Plaintiffs to produce documents in response to Defendant's First Requests for Production Nos. 48, 57, 58, 59, 61, 68, 72, and 73:

> 48.   Any and all documents relating to procedures, tests, and test results to verify that residents at the Riverside Property are not using illegal drugs or alcoholic beverages during their residency.

> 57.   Any and all documents reflecting prices or charges for services at the Riverside Property.

> 58.   Any and all documents relating to an agreement with potential patients, insurance companies, or other third-party payors reflecting prices or charges for services at the Riverside Property.

> 59.   Copies of any and all federal and state corporate tax returns for Sovereign Health of Florida, Inc. for the past ten (10) years.

> 61.   Any and all billing statements, invoices, or statements of services rendered to a resident or patient at the Riverside Property or to an insurance company or payer for a resident or patient at the Riverside Property.

> 68.   Any and all periodic or onetime operations reports, reports to management, or reports to shareholders which would indicate the services being provided at, the revenues being generated at, and the costs being incurred at the Riverside Property.

> 72.   Any and all periodic or onetime operations reports, reports to management, or reports to shareholders which would indicate the services being provided at, the revenues being generated at, and the costs being incurred at the Riverside Property.

> 73.   Any and all documents showing the number of residents or patients at the Riverside Property.

Doc. 26 at 8-9; Doc. 26-9 at 14-17.   To all of the requests above, Plaintiff answered, "[s]ubject to entry of an order to protect confidentiality, [it] agrees to produce responsive non-privileged documents at a mutually convenient time and place."   Doc. 26-9 at 14-17.   Plaintiff seeks to produce documents under a confidentiality order in

response to the above requests as well as Request No. 60 and Defendant's First Interrogatories Nos. 6 and 7.   Doc. 25 at 3-5.   Plaintiff states that these requests seek the two overarching categories of information: Plaintiff's confidential financial information and patient data.   *Id.* at 7.

Plaintiff argues that they can produce the requested documents only pursuant to a protective order because its financial information and patient records are private in nature, and state and federal laws protect Plaintiff's patient records.   Doc. 25 at 5-6.   Plaintiff submitted a proposed confidentiality order and asks the Court to adopt it.   Doc. 25-1.   Defendant asserts that it cannot agree or stipulate to the proposed confidentiality order because as a public agency, it is bound by Chapter 119 of the Florida Statutes.   Doc. 26 at 9.   Defendant states that once Defendant receives documents from Plaintiff, under Section 119.07 of the Florida Statutes,[3] Defendant only acts as a pass-through and cannot decide independently whether the documents are exempt from the Public Records Act.   Doc. 27 at 3.

The parties state that before filing the motions (Docs. 25, 26), they had good faith discussions on filing a stipulated protective order.   Doc. 25 at 5.   When Plaintiff proposed a confidentiality order, however, the parties could not reach an agreement on several clauses within the proposed order.   Doc. 25 at 7; Doc. 27 at 4. Defendant argues that the proposed order allows Plaintiff to unilaterally designate information as confidential.   Doc. 27 at 4; Doc. 25-1 at 2 ("All designations of

---

[3] Section 119.07(f) states that "[i]f requested by the person seeking to inspect or copy the record, the custodian of public records shall state in writing and with particularity the reasons for the conclusion that the record is exempt or confidential."

Confidential Information shall be made in good faith by the Producing Party at the time of Disclosure, production, or tender."). Defendant also finds problematic that the proposed order limits the use and disclosure of confidential information as the information may "be used solely for the purposes of this litigation and for no other purpose" and "may be disclosed to and viewed by the following 'Authorized persons.'" Doc. 25-1 at 5; Doc. 27 at 4.

> The most contentious clause is the following:
>
> 5. (c) No one who has access to these documents identified as Confidential Information shall distribute, disclose, divulge, publish or otherwise make available any portion, extracts or summaries thereof or disclose the subject matter to any other person, except persons who are also authorized to view or have access to them under the terms of this Order, and except the Court as necessary, in the conduct of this particular litigation, unless such persons have first obtained leave of the Court or the consent of Producing Party to disclose such Confidential Information.

Doc. 25-1 at 7. Defendant cannot accept this clause because the proposed order "appears to provide that once [] Plaintiff claims that something is exempt, [] Defendant cannot produce it in response to a public records request unless it obtains leave of [c]ourt or the consent of [] Plaintiff." Doc. 27 at 5. Defendant believes the proposed order will cause Defendant to violate the Public Records Act. *Id.*

> To protect itself from future lawsuits, Defendant proposes to add the following clause:
>
> Should anyone file to require disclosure, [] Plaintiff will be responsible for defending the Confidential Information as exempt from disclosure and will protect, defend, and fully indemnify [] Defendant from any and all claims, attorney's fees, and costs arising from or relating to [] Plaintiff's determination that the documents (or portions thereof) are exempt from disclosure.

Doc. 25 at 7.   Plaintiff finds this clause "extremely troubling" because this provision makes Plaintiff indemnify Defendant because Plaintiff wants to protect its financial information and patient records.   *Id.*

### a. *Florida's Public Records Act, Chapter 119 of the Florida Statutes*

As the parties point out, if the Court grants Defendant's motion to compel Plaintiff's responses to Defendant's discovery requests (Doc. 26) or Plaintiff's motion for a confidentiality order (Doc. 25), the Order may have consequences under the Public Records Act.   If the Court grants Defendant's motion to compel, then Plaintiff's documents may become accessible to the public.   Fla. Stat. § 119.07.   If the Court grants Plaintiff's motion for a confidentiality order, the order may expose Defendant to liability under the Public Records Act.   Doc. 27 at 5.   In other words, the Court cannot simply grant one motion without considering consequences that may follow under the Public Records Act.   Fla. Stat. § 119.07.   Before considering the motions on the merits, the Court notes that the question of whether Plaintiff's documents are exempt from the Public Records Act is not before this Court.

The Court finds Defendant's argument persuasive that Plaintiff's proposed confidentiality order may expose Defendant to liability under the Public Records Act. Doc. 27 at 5.   Section 119.011(12) of the Florida Statutes provides that public records are "all documents, papers, letters, . . . regardless of the physical form, characteristics, or means of transmission, made or received . . . in connection with the transaction of official business by any agency."   In effect, the definition applies to "almost everything generated or received by a public agency."   *Shevin v. Byron*, 379 So.2d

633, 640 (Fla. 1980).    Particularly, any documents the agency receives during the course of performing a public function are public records because the public may judge the propriety of the agency's decision.    *Hill v. Prudential Ins. Co. of Am.*, 701 So.2d 1218, 1220 (Fla. Dist. Ct. App. 1997); *see also Wait v. Fla. Power & Light Co.*, 372 So.2d 420 (Fla. 1979) (holding that engaging in litigation before a federal forum does not affect or change rights under the Public Records Act).    Therefore, when a public agency receives documents in the course of an investigation into an alleged violation of the code, the agency is performing a public function, and the documents received by the agency from a third-party are public records.    *Hill*, 701 So.2d at 1220. Likewise, Defendant here is performing its public function because it is attempting to prove Plaintiff's alleged violation of the City's code as part of its defenses.    *See id.*; Doc. 26 at 4-5; Doc. 4 at 9.    As a result, once Plaintiff hands over its documents to Defendant, its documents may become accessible to the public as public records.    *See Hill*, 701 So.2d at 1220.

Defendant, as a public agency, has to "permit the [public] record to be inspected and copied by any person desiring to do so."    Fla. Stat. § 119.07(1)(a).    In executing its duty, Defendant cannot delay in making public records available except under very limited circumstances.    *Promenade D'Iberville, LLC v. Sundy*, 145 So.3d 980, 983 (Fla. 2014).    Defendant may delay if it believes that part or all of the requested record is exempt under the Public Records Act, or if the requesting party does not pay the appropriate fees.    *Id.*    Overall, Defendant's duty is subject to only a few specific exceptions such "copyright and trade secret laws and public records exemptions."

Fla. Stat. § 119.01(2)(d).   A private party's designation of information as confidential or expectation of non-disclosure "cannot render public records exempt from disclosure."   *Sepro Corp. v. Fla. Dep't of Envtl. Prot.*, 839 S.2d 781, 784 (Fla. Dist. Ct. App. 2003).   Even the judiciary cannot exempt public records from public disclosure unless the records fall under a statutory exemption specifically provided by the legislature.   *Fla. Freedom Newspapers, Inc. v. McCrary*, 520 So.2d 32, 34 (Fla. 1988); *Bd of Trs., Jacksonville Police & Fire Pension Fund v. Lee*, 189 So.3d 120, 123 (Fla. 2016).

On the other hand, to prevent public disclosure of its documents as public records, Plaintiff, as the owner of the documents, must take "reasonable measures to prevent [the documents] from becoming available to persons other than those selected by [Plaintiff] to have access."   *Sepro*, 839 S0.2d at 783.   The reasonable measures include labeling the documents given to Defendant as "putatively exempt from public disclosure" as well as "specify[ing] in writing upon delivery to [the] agency that [the documents are] confidential and exempt under the public records law."   *Id.* at 784. Here, Plaintiff recognizes and proposes to undertake its burden to take reasonable measures.   *See id.*   Plaintiff states that Defendant may disclose the documents designated by Plaintiff as confidential if Plaintiff "timely fails to object after a public records request is served, or if [Plaintiff] fails to establish that its confidential documents are exempt from disclosure."   Doc. 28 at 11.   This statement also demonstrates Plaintiff's awareness that its simple designation of the documents as confidential does not render its documents exempt from the Public Records Act, and

that Defendant has to timely respond to a public record request.   *Sepro*, 839 S0.2d

at 784; *Promenade*, 145 So.3d at 983.

To protect the parties' competing interests under the Public Records Act, the

parties have discussed the measures they will take after disclosure of Plaintiff's

documents to Defendant.   Doc. 25 at 6-7; Doc. 27 at 1-2.   The parties, however, could

not agree on what each party's appropriate responsibility is when there is a lawsuit

involving a public request to view Plaintiff's documents.   Doc. 25 at 6-7; Doc. 27 at

1-2.   If Defendant receives and denies a request to view Plaintiff's documents based

on an exemption and the factual and legal basis for the exemption furnished by

Plaintiff, a person who made the request may challenge Defendant's decision not to

disclose Plaintiff's documents in a civil lawsuit.   *Promenade*, 145 So.3d at 984; Fla.

Stat. § 119.11.   In such lawsuit, even though Plaintiff refused to "protect, defend,

and fully indemnify" Defendant, Defendant may disclose Plaintiff's documents if

Plaintiff does not timely respond or furnish an appropriate statutory exemption.

Doc. 25 at 7; Doc. 28 at 11.   The proposed confidentiality order, however, does not

provide that Plaintiff will intervene or substitute Defendant as a party or share

Defendant's litigation costs when Defendant has to defend Plaintiff's documents in a

lawsuit.   Doc. 25-1.   As a result, once Plaintiff timely responds and furnishes an

appropriate statutory exemption for its documents, the burden is on Defendant to

defend Plaintiff's documents.   Doc. 27 at 5.

Because of the above limitations, the Court cannot adopt Plaintiff's proposed

confidentiality order.   Doc. 25-1.   The parties, however, "may reach their own

agreement regarding the designation of materials as 'confidential.'"   Doc. 13 at 3. The Court need not intervene to endorse a confidentiality agreement.   *Id.*   As stated in the Case Management and Scheduling Order ("CMSO"), the Court will uphold the parties' stipulated and signed confidentiality agreement.   *Id.*

### b. *Confidentiality of Plaintiff's Requested Documents*

Given that the Court cannot grant Plaintiff's motion for a confidentiality order (Doc. 25), the Court will examine whether Plaintiff's documents requested by Defendant are in fact confidential and cannot be produced in response to Defendant's motion to compel (Doc. 26) absent a confidentiality order.   Doc. 25.

Rule 33 of the Federal Rules of Civil Procedure sets forth the procedures for obtaining access to documents and things within the control of the opposing party. Fed. R. Civ. P. 34.   Rule 34(a) allows a party to serve on any other party a request within the scope of Rule 26(b).   Fed. R. Civ. P. 34(a).   Rule 26(b) permits discovery

> regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery, in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).   Relevancy is determined based on the "tendency to make a fact more or less probable than it would be without the evidence, and the fact is of consequence in determining the action."   Fed. R. Evid. 401.   A request for production must state "with reasonable particularity each item or category of items to be inspected."   Fed. R. Civ. P. 34(b)(1)(A).   The party to whom the request is

directed must respond within thirty days after being served, and "for each item or category, . . . must state with specificity the grounds for objecting to the request, including the reasons."   Fed. R. Civ. P. 34(b)(2).   Furthermore, "[a]n objection must state whether any responsive materials are being withheld on the basis of that objection."   Fed. R. Civ. P. 34(b)(2)(C).   When a party fails to produce documents as requested under Rule 34, the party seeking the discovery may move to compel the discovery.   Fed. R. Civ. P. 37(a)(3)(B)(iv).

As noted, Plaintiff categorizes the information sought by Defendant into two groups: "confidential financial information and patient data."   Doc. 25 at 7. Plaintiff argues that the documents under each category are confidential and should be disclosed only pursuant to a confidentiality order.   *Id.* at 5-6; Doc. 28 at 8-9. Accordingly, the Court classifies Defendant's discovery requests into one of Plaintiff's two categories and will examine Plaintiff's arguments on confidentiality.   *See* Doc. 25 at 5-6; Doc. 28 at 8-9.

### a. Plaintiff's Financial Information

As previously set forth, Defendant's First Requests for Production of Documents Nos. 57, 58, 59, 61, and 68 seek Plaintiff's financial information.   Doc. 26 at 8-9.   To the above requests, Plaintiff answered that it agrees to produce non-privileged documents at a mutually convenient time and place subject to a confidentiality order, and did not object.   Doc. 26-9 at 14-16.   Plaintiff asserts that the Court should enter a confidentiality order because the court has routinely entered a confidentiality order to protect the private nature of financial information.   Doc.

25 at 5; *see Aquacal, Inc. v. Hermann Warehouse Corp.*, No. 8:05-MC-69-T-17TBM, 2005 WL 2436419 (M.D. Fla. Oct. 3, 2005).

Rule 26(c) provides that "a party or any person" may move for a protective order to protect a person from "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). The court, upon showing of good cause, may issue a protective order including "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way," and "forbidding the disclosure or discovery." Fed. R. Civ. P. 26(c). "Rule 26(c) gives the district court discretionary power to fashion a protective order." *Farnsworth v. Procter & Gamble, Co.*, 758 F.2d 1545, 1548 (11th Cir. 1985).

Under the Federal Rules of Civil Procedure, "there is no outright privilege for confidential information or trade secrets." *Kaiser Aluminum & Chem. Corp. v. Phosphate Eng'g & Constr. Co. Inc.*, 153 F.R.D. 686, 688 (M.D. Fla. 1994). A party moving for a protective order bears the burden to show "that the information is confidential and that the disclosure would be harmful." *Id.*; *Gober v. City of Leesburg*, 197 F.R.D. 519, 521 (M.D. Fla. 2000). If the moving party meets its burden, then a party seeking to compel must show "that the information sought is relevant and necessary." *Kaiser Aluminum*, 153 F.R.D. at 688; *Gober*, 197 F.R.D. at 521. The court balances interests of both parties in deciding whether to grant the motion for a protective order. *Kaiser Aluminum*, 153 F.R.D. at 688.

Here, the Court finds that Plaintiff did not meet its burden whereas Defendant showed the relevancy and necessity of Plaintiff's financial information. *See id.* Plaintiff does not go beyond asserting that its financial information is confidential because it is private in nature, and does not adequately explain why disclosure of its financial information would be harmful.   Doc. 25 at 5; Doc. 28 at 7.   In support, Plaintiff cites court cases in which the court has entered a confidentiality order to protect trade secrets.   Doc. 25 at 5; Doc. 28 at 7.   In citing those cases, however, Plaintiff does not mention that it has a burden to demonstrate the documents' confidentiality and potential harm from disclosure.   Doc. 25 at 5; *see Kaiser Aluminum*, 153 F.R.D. at 688; *see Gober*, 197 F.R.D. at 521.

On the other hand, Defendant shows Plaintiff's financial documents are crucial to proving its defense.   Doc. 26 at 4-6.   Defendant's pivotal defense against Plaintiff's claim of discrimination is that Plaintiff allegedly ran an impermissible facility in violation of the City's zoning code and failed to supply business information necessary to obtain a business tax receipt.   Doc. 4; *Id.*   Therefore, Plaintiff's financial information is highly relevant and necessary to Defendant's defense because it proves the allegedly illegal nature of Plaintiff's business operation.   *See* Doc. 26 at 4-6.   Based on the above analysis, the Court finds that Plaintiff has not met its burden, and even if Plaintiff has, Defendant's showing of compelling relevancy and necessity outweighs Plaintiff's showing of confidentiality.   *See Kaiser Aluminum*,

153 F.R.D. at 688; *Gober*, 197 F.R.D. at 521. Accordingly, Defendant's motion to compel Plaintiff's response to Requests Nos. 57, 58, 59, 61, and 68 are granted.[4]

The Court, however, limits the time frame of Request No. 59 to Plaintiff's tax and state tax returns of the years 2014 and 2015.   Plaintiff began operating on the Riverside Property in 2014, and the alleged dispute concerns the nature of Plaintiff's services during the years 2014 and 2015.   Doc. 26 at 3-6.   Tax returns beyond those two years are not within the discoverable scope of Rule 26(b)(1) because Plaintiff's activities during those years are not relevant to the parties' claims or proportional to the needs of the case.   Fed. R. Civ. P. 26(b)(1).

> b.  Plaintiff's Patient Records: Section 397.501(7) of the Florida Statutes

Defendant's First Requests for Production of Documents Nos. 58, 61, 72, and 73 seek Plaintiff's patient records.   Doc. 26 at 8-9.   In response to these requests, Plaintiff also answered that it agrees to produce non-privileged documents at a mutually convenient time and place subject to a confidentiality order, and did not object.   Doc. 26-9 at 14-17.   With respect to patient information, Plaintiff states that it cannot disclose its patient records because they are protected by federal and state privacy laws, including Section 397.501(7) of the Florida Statutes and the Health Insurance Portability and Accountability Act ("HIPAA").   Doc. 25 at 6.   Under Section 397.501(7) of the Florida Statutes, Plaintiff claims that it needs individual

---

[4] As stated in the CMSO, Plaintiff still may produce the requested documents under a confidentiality agreement if it can reach a stipulated and signed confidentiality agreement with Defendant.   Doc. 13 at 3.

patient's written consent to release information pertaining to substance abuse clients under Section 397.501 of the Florida Statutes. *Id.* at 6. The Court analyzes Plaintiff's claim under Section 397.501 subject to the Court's discussion of HIPAA's application to Plaintiff in the next section.

Plaintiff is covered under Chapter 397 of the Florida Statutes because it is licensed under Chapter 397 to provide substance abuse services. Doc. 26-6 at 1-3. Plaintiff, therefore, is correct in that it is subject to the requirements of Section 397.501(7), which makes its patient records exempt from the Public Records Act. Fla. Stat. § 397.501(7)(a) ("the records of service providers which pertain to the identity, diagnosis, and prognosis of and service provision to any individual are confidential . . . [and] are exempt from s. 119.07(1) and s. 24(a), Article I of the State Constitution."). Plaintiff, however, is incorrect that it cannot release the records without the patients' written consents. Doc. 25 at 6. Plaintiff may release protected patient information subject to a few exceptions, including "court order based on application showing good cause for disclosure." Fla. Stat. § 397.501(7)(a)(5). In finding good cause for disclosure, the court must examine "whether the public interest and the need for disclosure outweigh the potential injury to the individual, to the service provider and the individual, and to the service provider itself." Fla. Stat. § 397.501(7)(a)(5).

Here, the Court finds good cause because Plaintiff's patient information sought is relevant to Plaintiff's claims and Defendant's defense. *See Appel v. Quilantang*, 629 So.2d 1004, 1005 (Fla. Dist. Ct. App. 1993) (finding good cause was demonstrated

because the party's alcoholism could have been relevant specifically to her claim); Fla. Stat. § 397.501(7)(a)(5). The nature of Plaintiff's health services offered to its patients is central to Defendant's defense, and Defendant is unlikely to secure this information from other sources. Doc. 26 at 5-6. Depending on the nature of the information produced, the patient information also can strengthen Plaintiff's claim of discrimination by showing that Plaintiff was not in violation of the City's zoning code. Doc. 28 at 4-5.

     c.   <u>Plaintiff's Patient Records: Health Insurance Portability and Accountability Act ("HIPAA")</u>

Plaintiff mentions in passing that its patient records also are protected by ("HIPAA"). Doc. 25 at 5. Plaintiff implies that it is a covered entity under HIPAA, and Defendant does not contest this. Doc. 25 at 5; Docs. 26, 27. Plaintiff's implication may be correct because HIPAA applies to a "health care provider who transmits health information in electronic form in connection with a transaction covered by this chapter." 45 C.F.R. § 160.102. A health care provider indicates a provider of service, defined as "a hospital, critical access hospital, skilled nursing facility, *comprehensive outpatient rehabilitation facility*, home health agency, hospice program, or, . . . a fund." 45 C.F.R. § 160.103; 42 U.S.C. § 1395(x)(u) (2015) (emphasis added).[5]

Regardless of state privacy laws, if Plaintiff is a covered entity under HIPAA, it must comply with all the requirements of HIPAA to protect health information of

---

[5] The Court only holds that HIPAA *may* apply to Plaintiff.

its patients.   *OPIS Mgmt. Res., LLC v. Sec'y, Fla. Agency for Health Care Admin.*, 713 F.3d 1291, 1295 (11th Cir. 2013).   Even though HIPAA does not prevent the parties from disclosing protected patient information during the discovery phase, it provides procedures for producing such information.   *State Farm Mut. Auto. Ins. Co. v. Kugler*, 840 F. Supp. 2d 1323, 1328 (S.D. Fla. Dec. 23, 2011).   A covered entity under HIPAA may disclose protected health information, defined as "individually identifiable health information," during any judicial proceeding in response to a court order.   45 C.F.R. §§ 160.103, 164.512(e)(1)(i).   The entity also may disclose such information in response to a discovery request if a party seeking the information provides satisfactory assurance that the party has made reasonable efforts (1) to give notice to patients whose information is being sought, or (2) to secure a qualified protective order.   45 C.F.R. § 164.512(e)(1)(ii).

Here, neither party argues that they attempted to follow the HIPAA procedures.   The parties do not indicate at all that Defendant attempted to provide notice to Plaintiff's patients.   Docs. 25, 26, 27, 28.   Furthermore, the Court does not see any evidence that Defendant has made reasonable efforts to secure a qualified protective order by agreeing to a qualified protective order or requesting a qualified protective from the Court.   *See* 45 C.F.R. § 164.512(e)(1)(iv).

Absent any showing on (1) whether HIPAA applies to Plaintiff, and (2) if it does, whether the parties have attempted to follow the HIPAA procedures, the parties must redact any patient identifying information to ensure their non-violation of HIPAA.   *See State Farm Mut. Auto. Ins.*, 840 F. Supp. 2d at 1328-29 (finding that

the party seeking medical records is not seeking "protected health information" because patient identifying information can be redacted from the requested documents).   Here, the parties already discussed redacting identifiable patient information.   Doc. 28 at 11.   Plaintiff states that it proposed to redact identifiable patient information at an estimated cost of $40,000 - $50,000.   *Id.* at 12.   Plaintiff asked Defendant to bear the cost of redaction, which Defendant refused.   *Id.*

A general presumption is that parties bear their own costs in responding to discovery requests.   *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 358 (1978); *Indep. Mktg. Grp., Inc. v. Keen*, No. 3:11-cv-447-J-25MCR, 2012 WL 207032, at *2 (M.D. Fla. Jan. 24, 2012).   If a responding party finds undue burden or cost in responding to a discovery request, it may ask the court to grant orders under Rule 26(c), such as "conditioning discovery on the requesting party's payment of the costs of discovery."   *Oppenheimer Fund*, 437 U.S. at 358; *see also Hines v. Widall*, 183 F.R.D. 596, 601 (N.D. Fla. 1988).   If the court denies a motion for a protective order, the court still may, "on just terms, order that any party or person provide or permit discovery."   Fed. R. Civ. P. 26(c)(2).

Furthermore, Rule 26(b)(1) provides that among the factors considered in deciding the scope of discovery are "whether the burden or expense of the proposed discovery outweighs its likely benefit," "the parties' relative access to relevant information," and "the importance of the discovery in resolving the issues."   Fed. R. Civ. P. 26(b)(1).   The court must limit the extent of discovery if it finds that "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from

some other sources that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

Here, the Court will not limit the scope of discovery given the importance of the documents sought and their relevance to the parties' claims and defenses. As noted above, Plaintiff's patient files are critical to Defendant's defenses and Plaintiff's claims. Doc. 26 at 5-6; Doc. 28 at 4-5; *see* Fed. R. Civ. P. 26(b)(1). Because of their importance and relevancy, the expense of redacting the requested documents does not outweigh the documents' value. *See* Fed. R. Civ. P. 26(b)(1). They are neither unreasonably duplicative nor cumulative because they have never been produced before. Doc. 26 at 13; Fed. R. Civ. P. 26(b)(2)(C)(i). Furthermore, Defendant is unlikely to be able to secure these files from other sources.

Given the high expense of redacting Plaintiff's patient files, the court will condition the production of Plaintiff's patient files on Defendant bearing half of the redaction cost. *See Oppenheimer Fund*, 437 U.S. at 358; Fed. R. Civ. P. 26(c)(2). Plaintiff states that the estimated cost of redaction is approximately $40,000 – 50,000, which Defendant does not dispute. Doc. 26 at 10; Doc. 28 at 12. The cost places a significant financial burden on Plaintiff alone to bear. *See* Doc. 28 at 12. Furthermore, because of the high estimated cost of redacting the files, Plaintiff states that it sent sample patient files to Defendant so that Defendant could determine the scope of information it needs. *Id.* Defendant, however, decided that it needed all of Plaintiff's patient files, forcing Plaintiff to redact its entire patient files. *Id.* Accordingly, under Rule 26(c)(2), the Court will compel the production of Plaintiff's

patient files and will apportion the cost of redaction evenly between the two parties. Fed. R. Civ. P. 26(c)(2); *see Oppenheimer Fund*, 437 U.S. at 358.

Thus, the Court grants Defendant's motion to compel Plaintiff's answers to Defendant's First Requests for Production of Documents No. 48, 57, 58, 59, 61, 68, 72, and 73. In responding to those requests, Plaintiff shall redact any identifiable patient information, and Defendant shall bear half of the cost for redaction.

### III. Defendant's Motion to Determine Sufficiency of Plaintiff's Response to Defendant's First Request for Admissions (Doc. 26)

A party may serve a request to admit "the truth of any matters" that fall within the scope of Rule 26(b)(1), regarding "the facts, the application of law to fact, or opinions about either." Fed. R. Civ. P. 36(a). If a responding party decides not to admit a matter, it must "specifically deny it or state in detail why [it] cannot truthfully admit or deny it." Fed. R. Civ. P. 36(a)(4). A denial must be a fair response to the substance of the matter. Fed. R. Civ. P. 36(a)(4). A responding party may raise objections or qualify its response provided that "the response addresses the substance of the request." *Rebman v. Follett Higher Educ. Grp., Inc.*, No. 6:06-cv-1476-Orl-28KRS, 2008 WL 3928793 at *1 (M.D. Fla. Aug. 26, 2008); *see* Fed. R. Civ. P. 36(a)(4)-(5).

A requesting party may challenge a response under two rules of the Federal Rules of Civil Procedure: "Rule 36(a), which addresses the form of the answer, and Rule 37(c) which addresses the answer's factual accuracy." *Cabrera v. Gov't Emp. Ins. Co.*, No. 12-61390-CIV, 2014 WL 2999206, at *17 (S.D. Fla. July 3, 2014); *Sprint Solutions, Inc. v. 4 U Cell, LLC*, No. 2:15-cv-605-FtM-38CM, 2016 WL 4815101, at *2

(M.D. Fla. Sept. 14, 2016).   Under Rule 36(a)(6), a requesting party may ask the Court to determine the sufficiency of an answer or objection.   Fed. R. Civ. P. 36(a)(6). If the Court finds the answer does not comply with the rule, the Court may "order either that the matter is admitted or that an amended answer be served."   Fed. R. Civ. P. 36(a)(6).

Defendant moves to determine the sufficiency of Plaintiff's amended responses to Defendant's First Requests of Admissions Nos. 1, 2, 3, 4, and 5.   Doc. 26 at 11-12. Defendant asked Plaintiff to admit or deny that Plaintiff is "currently conducting activities and/or serving clients" within the boundaries permitted by Plaintiff's various licenses, such as "[Plaintiff's] Inpatient Detoxification category of licensure as licensed by the [DCF]," and "[Plaintiff's] Residential I category of licensure as licensed by the [DCF]."[6]   *Id.*   Plaintiff admitted that it has certain types of DCF licenses, but answered, "unable to admit or deny as framed as the request is ambiguous ('conducting activities' 'serving' within 'licensure'), and compound."   *Id.* Plaintiff repeated the same objection to each request.   *Id.*   Plaintiff argues that it cannot admit or deny each request because connectors such as "and/or" and ambiguous terms, "conducting activities," "serving," "within," and "licensure" make the requests ambiguous and compound   Doc. 28 at 14.

The Court finds Plaintiff's objection insufficient because the requests are not ambiguous or compound.   *Id.* at 13.   A reasonable party can understand what each

---

[6] For instance, Defendant asked "[p]lease admit or deny that [Plaintiff] is currently conducting activities and/or serving clients within its Inpatient Detoxification category of licensure as licensed by the [DCF.]"   Doc. 26-11 at 1.

request is seeking.  *Id.*   Furthermore, Plaintiff possesses the corresponding licenses and understands what activities are permitted by its licenses.   Doc. 26-6 at 1-3. Therefore, this case is distinguishable from the cases to which Plaintiff cites, in which the requests are "nearly incomprehensible and contain[] miscellaneous charts, random arguments, and incoherent statements," or are "replete with vague and unclear terms."   *Lawrence v. U.S.*, No. 8:11-cv-2735-T-17AEP, 2012 WL 9491751, at *2 (M.D. Fla. Oct. 3, 2012); *Cutino v. Untch*, 303 F.R.D. 413, 415 (S.D. Fla. 2014). With respect to a connector "and/or," using the connector once in each request does not automatically make a request compound.   *Cf. Treister v. PNC Bank*, No. 05-23207-CIV, 2007 WL 521935, at *3 (S.D. Fla. Feb. 15, 2007) (finding that the numerous use of multiple "and/or" statements makes a request compound).   In addition, under Rule 36(a)(4), Plaintiff can supply its own reasonable interpretation of the terms to its answers instead of simply denying or admitting the requests.   *Id.*; *Brannan v. GEICO Indem. Co.*, No. 1:12-cv-239-GRJ, 2013 WL 5460581, at *3-4 (N.D. Fla. Sept. 27, 2013) (finding that the responding party's objections are unresponsive because the objections rely on assertions that the phrasing in the requests are vague and ambiguous).   Accordingly, under Rule 36(a)(6), the Court orders Plaintiff to amend its amended answers to Defendant's First Requests for Admissions Nos. 1, 2, 3, 4, and 5.

IV.   **Deposition of Plaintiff's CEO and President** (Doc. 26)

On February 9, 2016, Defendant served a list of topics for a deposition to Plaintiff.   Doc. 26 at 14.   On February 26, 2016, Defendant requested that Plaintiff

designate a corporate representative as a deponent under Rule 30(b)(6).   *Id.*
Plaintiff did not respond by April 18, 2016, and Defendant decided that Dr. Tonmoy
Sharma and Devarshi Barkataki, as the CEO and President of Plaintiff, respectively,
would have knowledge on the topics Defendant served because they are Plaintiff's
officers, directors, and/or managing agents.   *Id.*   Defendant subsequently notified
Plaintiff that it was withdrawing the list of topics and would like to depose Dr.
Sharma and Mr. Barkataki in Fort Myers, Florida pursuant to Rule 30(b)(1).   *Id.*
Plaintiff responded that Dr. Sharma lives in California and Mr. Barkataki lives in
New Jersey.   Doc. 28 at 14.   Plaintiff requested that Defendant either travel to
California to depose its two officers or pay for the officers' travel expenses to Fort
Myers.   Doc. 26 at 14.   Defendant seeks the Court to order Dr. Sharma and Mr.
Barkataki to come to Fort Myers for depositions.   *Id.* at 15.

A party "may depose, any person, including a party, without leave of court
except as provided in Rule 30(a)(2)."   Fed. R. Civ. P. 30(a)(1).   If a party names a
private corporation as the deponent, the named corporation "must designate one or
more officers, directors, or managing agents, or designate other persons who consent
to testify on its behalf."   Fed. R. Civ. P. 30(b)(6).   The persons designated "must
testify about information known or reasonably available to the organization."   Fed.
R. Civ. P. 30(b)(6).   Local Rule 3.04(b) provides that "a non-resident plaintiff may
reasonably be deposed at least once in this District during the discovery stages."
Furthermore, as Plaintiff points out, generally, a deposition of a corporate officer is
ordinarily taken at its principal place of business "*especially, as is in this case, the*

*corporation is the defendant.*"   *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979)

(emphasis added).[7]   This presumption may be overcome upon a showing of various

factors including:

> the location of counsel for the parties, the number of representatives a
> party is seeking to depose, whether deponents often travel for business
> purposes, [] the equities regarding the nature of the claim and
> relationship of the parties, and the financial burden on the corporation
> designation the representative.

*LeBlanc v. Unifund CCR Partners, G.P.*, No. 8:06-cv-1216-T-TBM, 2007 WL 2446900,

at *3 (M.D. Fla. Aug. 23, 2007).

Defendant argues that the deposition of the two officers should take place in

Fort Myers because Plaintiff chose the forum, and counsel for the parties are located

here.   Doc. 26 at 16-17.   Furthermore, the two officers have traveled to Fort Myers

for business.   *Id.* at 17.   Defendant points to e-mail exchanges that reference the

two officers' visits to Fort Myers in April, 2013 and May, 2013.   *Id.*   Because of these

factors, Defendant states that the depositions should not take place at Delaware

which, according to Defendant, is Plaintiff's principal place of business.   *Id.*

Plaintiff responds that the depositions should take place in California because

California is its principal place of business.   Doc. 28 at 15.   Plaintiff asserts that its

corporate office, corporate records, and most corporate officers are in California and

that its managerial and policymaking functions are carried out in California.   *Id.*

---

[7] The Eleventh Circuit adopted as binding precedent all of the decisions of the former
Fifth Circuit handed down prior to close of business on September 30, 1981.   *Bonner v. City
of Prichard Ala.*, 661 F.2d. 1206, 1209 (11th Cir. 1981) (en banc).

The depositions of Dr. Sharma and Mr. Barkataki should take place in Fort Myers.   The general presumption of taking depositions at the corporation's principal place of business is overcome because Plaintiff, the corporation, chose this forum, and counsel for the parties are here.   Doc. 26 at 16-17; *see LeBlanc*, 2007 WL 2446900, at *3.   Furthermore, the claims pertain to the activities of the facility located in Fort Myers and have no relationship to the overall corporate activities and records in California.   Doc. 26 at 3-6; Doc. 28 at 2-7; *see LeBlanc*, 2007 WL 2446900, at *3. Having two corporate officers travel to Fort Myers does not impose a significant financial burden on Plaintiff.   *See LeBlanc*, 2007 WL 2446900, at *3.   Having depositions of the officers here also corresponds with this District's general policy to have a non-resident plaintiff be deposed in this District at least once.   M.D. Fla. R. 3.04(b).

## V.    Defendant's request for attorney's fees (Doc. 26)

Defendant seeks the attorney's fees and costs of $1,375.00 associated with bringing this motion to compel.   Doc. 26 at 18.   This represents 5.5 hours at a rate of $250.00 per hours.   *Id.*   Plaintiff did not respond to this request.   Doc. 28. Plaintiff's failure to file a response to this request creates a presumption that this request is unopposed.   *Great Am. Assur. Co. v. Sanchuk, LLC*, No. 8:10-cv-2568-T-33AEP, 2012 WL 195526, at *3 (M.D. Fla. Jan. 23, 2012).

The rules mandate that if a motion to compel is granted the court must, after giving an opportunity to be heard, require the party whose conduct necessitated the motion to pay the movant's reasonable expenses incurred in making the motion,

including attorney's fees.   Fed. R. Civ. P. 37(a)(5)(A).   When a party makes a claim for fees, it is the party's burden to establish entitlement and document the appropriate hours and hourly rate.   *Am. Civil Liberties Union of Georgia v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999) (citing *Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988).

The Court, however, must not order the payment if: (i) the movant filed a motion before attempting in good faith to obtain the disclosure or discovery without court intervention; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; (iii) other circumstances make an award of expenses unjust. Fed. R. Civ. P. 37(a)(5)(A)(i)-(iii).   The term "substantially justified" means that "reasonable people could differ as to the appropriateness of the contested actions." *U.S. ex rel. Ragghianti Founds. III, LLC v. Peter R. Brown Constr.*, No. 8:12-cv-942-T-33MAP, 2013 WL 5290108, at *3 (M.D. Fla. Sept. 13, 2013) (citing *Maddow v. Procter & Gamble Co. Inc.*, 107 F.3d 846, 853 (11th Cir. 1997)).   The district court has discretion in determining that reasonable people could differ as to the appropriateness.   *Id.*

Plaintiff's objections to Defendant's First Set of Interrogatories were not substantially justified because they were not responsive to the requests and did not comply with Rule 36(a)(4).   *See id.*; *Brannan*, 2013 WL 5460581, at *3-4.   However, as to Plaintiff's responses regarding Defendant's First Requests for Production of Documents and depositions of the two officers, the Court finds that reasonable people could have differed as to the appropriateness of the discovery requests.   *U.S. ex rel.*

*Ragghianti Founds.*, 2013 WL 5290108, at *4.   Plaintiff's concerns about the dissemination of its private documents were not unfounded, especially given the implications under the Public Records Act.   Doc. 25.   As a result, the Court will grant only a part of the attorney's fees and costs of $375.00 representing 1.5 hours at an hourly rate of $250.00 per hour.   Doc. 26 at 18.

## VI.   Defendant's Unopposed Motion to Enlarge Deadlines (Doc. 29)

On April 19, 2016, the Court issued an Amended Case Management and Scheduling Order (Doc. 24) setting the deadline for Defendant's disclosure of expert reports to September 30, 2016, the discovery deadline to October 31, 2016, the mediation deadline to October 31, 2016, and the deadline for dispositive motions, *Daubert* and *Markman* motions to November 20, 2016.

Defendant seeks the extension of the deadlines because its motions to compel (Doc. 26) and Plaintiff's motion for a confidentiality order (Doc. 25) still were pending when it filed the motion for extension.   Doc. 29 at 3.   Despite being diligent in conducting discovery, Defendant argues that the information sought in its motion to compel (Doc. 26) is relevant to a number of issues, and it needs to know what those documents are about.   *Id.* at 3, 5.   Defendant seeks to extend the deadline to disclose Defendant's expert reports by thirty (30) days following the production of all documents after the Court's ruling on the motion to compel (Doc. 26), the discovery and mediation deadlines by thirty (30) days after the new deadline to disclose Defendant's expert reports, and the dispositive motion and *Daubert* motion deadline

by thirty (30) days after the new discovery and mediation deadlines. *Id.* at 5. Plaintiff does not oppose this motion for extension. *Id.* at 8.

Based on the Court's ruling herein, for good cause shown, Defendant's unopposed motion for the extension is granted. The Court will extend the deadline to disclose Defendant's expert reports to November 16, 2016, the discovery and mediation deadlines to December 16, 2016, and the deadline for dispositive motions, *Daubert*, and *Markman* motions to January 16, 2017. Given the above extensions, the Court *sua sponte* will extend the trial term to April 3, 2017 and accordingly adjust the remaining deadlines.

ACCORDINGLY, it is hereby

**ORDERED:**

1.     Plaintiff's Motion for Entry of a Confidentiality Order (Doc. 25) is **DENIED without prejudice**.

2.     Defendant City of Fort Myers' Motion (1) to Compel Plaintiff to Produce Documents, (2) to Determine the Sufficiency of Plaintiff's Responses and Objections to Request for Admissions, (3) to Compel Plaintiff to Produce Two of Their Officers, Directors and Managing Agents in Fort Myers for Depositions, and (4) for the Award of Reasonable Attorney's Fees (Doc. 26) is **GRANTED in part**. On or before **October 17, 2016**, Plaintiff shall produce documents responsive to Defendant's First Requests for Production of Documents No. 48, 57, 58, 59, 61, 68, 72, and 73. In responding to these requests, Plaintiff shall redact any identifiable patient information, and Defendant shall bear half of the cost for redaction.

3.     Defendant's Motion to Determine the Sufficiency of Plaintiff's Responses and Objections to Request for Admissions (Doc. 26) is **GRANTED**.   Plaintiff shall have up to and including **October 14, 2016** to amend its amended responses.

4.     Defendant's Motion to Compel Plaintiff to Produce Two of Their Officers, Directors and Managing Agents in Fort Myers for Depositions (Doc. 26) is **GRANTED**. Plaintiff shall produce Dr. Tonmoy Sharma and Devarshi Barkataki for depositions in Fort Myers, Florida prior to the extended discovery deadline of **December 16, 2016**.

5.     Defendant's Motion for the Award of Reasonable Attorney's Fees (Doc. 26) is **GRANTED in part.**   The Court awards attorney's fees and costs of $375.00 to Defendant.

6.     Defendant's Unopposed Motion to Enlarge Deadlines for Disclosure of Defendant's Experts, Discovery, Mediation and Dispositive Motions and *Daubert* Motions (Doc. 29) is **GRANTED**.

7.     An amended case management and scheduling order will be issued under separate cover.

**DONE** and **ORDERED** in Fort Myers, Florida on this 7th day of October, 2016.

CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record